IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

WARREN CHASE, #326-514  
        Plaintiff        :

   v.                        :     CIVIL ACTION NO. CCB-05-2985  
                                     (Consolidated with CCB-05-3343)  
WARDEN, *et al.*          :  
        Defendants

## **MEMORANDUM**

On November 2, 2005, plaintiff Warren Chase, then incarcerated at the Eastern Correctional Institution at Westover ("ECI"), sent a letter to the court alleging that he continues to be housed in an isolation cell on a tier where he is surrounded by known enemies. In that action, he also alleged that someone has tampered with his food and that he remains at ECI in contravention of a state court order requiring his transfer to Patuxent Institution. The letter was construed as a 42 U.S.C. § 1983 complaint seeking injunctive relief and defendant was required to respond. Paper No. 1, *Chase v. Warden*, Civil Action No. CCB-05-2985.

On December 2, 2005, plaintiff filed a second civil rights action seeking injunctive relief and again alleging that he continues to be housed near two enemies. He also claimed that correctional officers permitted one of his enemies to assault him.[1] The complaint further alleged that his legal papers and other property have been wrongfully confiscated.[2] Paper No. 1, *Chase v. Warden*, Civil Action No. CCB-05-3343.

The cases were consolidated and are now before the court on defendants' motion to dismiss

---

[1] In his second amended complaint (Paper No. 28), plaintiff states he seeks money damages to compensate for a four-inch-long scar over his left eye resulting from the November 29, 2005, assault by a fellow prisoner.

[2] This allegation concerning legal papers and other property was conclusively addressed in *Chase v. Warden*, Civil Action No. CCB-06-2685. As noted therein, these materials have been found and returned to plaintiff. Accordingly, the allegation will not be reexamined here.

or in the alternative motion for summary judgment (Paper No. 53), which shall be treated as a motion for summary judgment, and plaintiff's opposition thereto.[3]  (Paper No. 55).

## Standard of Review

Fed. R. Civ. P. 56(c) provides that:

> [Summary judgment] shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 247-48 (1986) (emphasis in original).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alternation in original) (quoting Fed. R. Civ. P. 56(e)).  The court should "view the evidence in the light most favorable to....the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002).  The court must, however, also abide

---

[3] Plaintiff has moved for default judgment on grounds that defendants did not timely respond to court order dated December 22, 2006.  Paper No. 51.  Defendants' response was not due at the time plaintiff sought default judgment and in fact was timely filed on February 20, 2007.  Plaintiff's motion is therefore denied.

by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

**Analysis**

Claiming to have known enemies at ECI,[4] plaintiff sought injunctive relief wherein he would be transferred to another Division of Correction facility, preferably Patuxent Institution.[5] Plaintiff has been transferred: thus, his claim for injunctive relief has been rendered moot. His claim for money damages due to the injury received on November 29, 2005, at the hands of fellow prisoner Bernard Harden, however, is not rendered moot by the transfer.

As stated by the Supreme Court,

> Prison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners. Having incarcerated persons with demonstrated proclivities for antisocial, criminal, and often violent, conduct, having stripped them of virtually every means of self-protection and foreclosed their access to outside aid, the government and its officials are not free to let the state of nature take its course. Prison conditions may be restrictive and even harsh, but gratuitously allowing the beating or rape of one prisoner by another serves no legitimate penological objective any more than it squares with evolving standards of decency. Being violently assaulted in prison

---

[4] To support his claim that enemies at ECI intended him harm, plaintiff alleged that on six separate occasions a laxative or other substance was placed in his food by a fellow prisoner assisting corrections personnel with a food cart. Paper No. 28 at 9. Plaintiff does not claim he was actually made ill as a result of such misconduct, and it appears he never reported food-borne illness to medical staff. Paper No. 53 at 7 and medical records attached thereto. Because he fails to allege actual injury, this unsubstantiated claim is dismissed.

[5] As noted in the memorandum of December 22, 2006, plaintiff was transferred to Patuxent Institution in July of 2006, and later transferred to the Maryland Reception Diagnostic Classification Center ("MRDCC"). After attacking a female officer at MRDCC, he was transferred on August 29, 2006, to the Maryland Correctional Adjustment Center ("MCAC"). To the extent plaintiff wishes to pursue his argument that he was to remain at Patuxent by order of a state judicial officer, he may do in a separate action brought pursuant to 28 U.S.C. § 2241.

>is simply not part of the penalty that criminal offenders pay for their offenses against society.

*Farmer v. Brennan*, 511 U. S. 825, 833 (1994) (internal quotations and citations omitted).  In a failure to protect claim brought under the Eighth Amendment, a prisoner must show first that the harm he suffered was objectively serious and second that prison officials acted with deliberate indifference.  *Id.*, 511 U. S. at 834.

Deliberate indifference is not determined by whether prison regulations have been followed or whether a prisoner has requested protective custody.   *See e.g. Rich v. Bruce*, 129 F.3d 336, 339-40 (4th Cir. 1997); *Lewis v. Richards*, 107 F.3d 549, 553 (7th Cir. 1997).   Deliberate indifference in the context of a failure to protect claim means that the defendant "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U. S. at 837.

The record establishes that corrections personnel at ECI housed plaintiff in a single cell on a segregation tier and kept him on "shower and recreation alone" status because he insisted that he had enemies within the prison.  (Paper No. 53, Exhibit 1, Declaration of Captain Walter West). Defendant Polk states that plaintiff told him on the day of the assault that he "had enemies" on the tier, but would not name his enemies.   (*Id.*, Exhibit 2, Declaration of Sgt. Bruce Polk).  Plaintiff claims he gave Polk a letter naming Harden as his enemy, but Polk did not read it, instead telling plaintiff to prepare for a strip search prior to being escorted to another area for a clothing exchange. (Paper No. 49 at 4-5).  After a group of prisoners was searched and handcuffed, officers escorted the group to the clothing exchange.  When Harden was uncuffed during the exchange, he rushed over and struck plaintiff in the face over the left eye with his handcuffs, causing a laceration that

required five stitches. (Paper No. 53, Exhibit 6 at 3-4, 6-7).

Nothing in the record indicates that any of the defendants knew Harden was plaintiff's enemy prior to the November 29, 2005, assault.[6] That defendant Polk did not take the time to read plaintiff's letter allegedly naming Harden as an enemy during the scheduled clothing exchange amounts at most to negligence, not a violation of constitutional magnitude. Neither Polk nor any of the named defendants failed to protect plaintiff from known enemies.

Plaintiff has failed to meet the burden of proof imposed by *Farmer*; thus, summary judgment shall be entered in favor of defendants and the case shall be closed. A separate order will be entered in accordance with this memorandum.


<u>March 28, 2007</u>              <u>    /s/                              </u>
(Date)                                  Catherine C. Blake
                                        United States District Judge

---

[6] Indeed, the affidavits, Administrative Remedy Procedure complaints, and correspondence submitted with defendants' motion for summary judgment show that while plaintiff complained on several occasions of having enemies at ECI, he did not provide defendants with the names of specific known enemies.